IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSE DIVISION

JIMMY WAKEFIELD,

    Plaintiff,

vs.                            Case No. 4:13-cv-339-WS-GRJ

WARDEN FLOURNOY,
ASSISTANT WARDEN SMITH,
S.I.S. FOLKS,
ACTING CAPTAIN WAGNER,
LT. WHITE,
OFFICER CHAMBERS,
OFFICER HARVEY,
OFFICER BEACH,
and OFFICER INGE
sued in their individual capacities,
and THE UNITED STATES OF AMERICA,

    Defendants.

_____/

THIRD AMENDED CIVIL RIGHTS COMPLAINT
PURSUANT   TO   BIVENS   AND   FTCA

    COMES NOW, Jimmy Wakefield ("Plaintiff"), pro se, and with permission from this Honorable Court, and files this Third Amended Complaint Pursuant to Bivens and FTCA, as instructed by this Honorable Court by order dated February 19, 2014. The basis for this motion is as follows:

### VERIFIED COMPLAINT FOR DAMAGES

#### I. Introduction

    1.    This is a Civil rights complaint filed by Plaintiff

Jimmy Wakefield, pro se, a federal prisoner, and pursuant to <u>Bivens v. Six Unknown Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 392-97, 91 S.Ct. 1999 (1971), for damages, of which he alleges violations of his constitutional rights under the Eighth Amendment, in that the Defendants violated his right to be free from cruel and unusual punishment, that the Defendants failed to protect the plaintiff, and that the Defendants were deliberately indifferent thereof. Plaintiff also alleges a claim pursuant to the Federal Tort Claims Act ("FTCA"), Title 28 U.S.C. §1346, of which he seeks damages for the tort of negligence.

## II. Jurisdiction

2. This Court has jurisdiction over the plaintiff's claims of violation of federal constitutional rights under 28 U.S.C. §§1331(a) and 1343(a)(3), and the plaintiff's FTCA claims are authorized by 28 U.S.C. §1346.

3. The United States District Court for the Northern District of Florida, Tallahassee Division, is an appropriate venue under 28 U.S.C. §1391(b)(2) and §1402(b) in that these civil actions are brought forward in the district court where plaintiff resided when the violations, and/or acts, and/or omissions complained of occured.

4. Concerning this Court's jurisdiction over plaintiff's FTCA claim(s), the plaintiff filed an administrative tort claim over the occurrences complained of on May 11, 2012, within two years after those occurrences, and brought suit within six months of the mailing of the notice of final agency denial of that claim

as required by 28 U.S.C. §2401.

### III. Parties

5.   Plaintiff Jimmy Wakefield at all times relevant, up and to the occurence complained of on May 11, 2012, was confined by the Federal Burea of Prisons at the Federal Detention Center ("FDC") in Tallahassee Florida; plaintiff was subsequently transfered and now is confined at the United States Penitentiary Canaan in Waymart Pennsylvania.

6.   Defendant Warden Flournoy at all times relevant was the Warden of FDC Tallahasse acting under the color of federal law.  He was legally responsible for the operation of FDC Tallahassee and for the welfare of all the inmates in that prison. He is sued in his individual capacity.

7.   Defendant Assistant Warden Smith at all times relevant was the Assistant Warden at FDC Tallahassee acting under the color of federal law.  He is being sued in his individual capacity.

8.   Defendant S.I.S. Folks at all times relevant was the S.I.S. Officer at FDC Tallahassee acting under the color of federal law.  He is sued in his individual capacity.

9.   Defendant "Acting Captain"/Officer Wagner at all times relevant was "Acting Captain" at FDC Tallahasse acting under the color of federal law.  He is sued in his individual capacity.

10.  Defendant Lt. White at all times relevant was a Lt. at FDC Tallahassee acting under the color of federal law.  He

is sued in his individual capacity.

11. Defendant Officer Chambers at all times relevant was an Officer at FDC Tallahassee acting under the color of federal law. He is sued in his individual capacity.

12. Defendant Officer Harvey at all times relevant was an Officer at FDC Tallahassee acting under the color of federal law. He is sued in his individual capacity.

13. Defendant Officer Inge at all times relevant was an Officer at FDC Tallahassee acting under the color of federal law. He is sued in his individual capacity.

14. Defendant Officer Beach at all times relevant was an Officer at FDC Tallahasse acting under the color of federal law. He is sued in his individual capacity.

15. Defendant United States of America is named as defendant in that it is the only proper defendant in suit against the federal government for torts committed by its employees.

## IV. Exhaustion of Available Remedies

16. Plaintiff exhausted all of his administrative remedies before filing this complaint.

## V. Factual Statement

17. On May 11, 2012, plaintiff was in the SHU ("Special Housing Unit") over-flow unit at FDC Tallahassee.

18. "Upon Information and Belief" plaintiff's status was that of "Transeg", in that he was a "transfer" from another prison under "segregation" status.

19. Plaintiff's stay at FDC Tallahassee was the result of an investigation that culminated in: no incident report being filed, yet being submitted for SMU ("Special Management Unit") placement, and with the SMU submission being denied.

20. Plaintff knows of no reasons, policy or otherwise as to why he shouldn't of been placed in general population while at FDC Tallahassee; instead he spent his time at FDC Tallahassee in the SHU.

21. Plaintiff spoke with Lt. White on a number of occasions concerning his continued placement in the SHU and that due to no incident reports and a SMU denial that he shouldn't be placed in general population; "I can't do anything about that. You need to talk to the Warden," is what he said.

22. Plaintiff spoke with S.I.S. Folks on a number of occasions concerning his continued placement in the SHU and that due to no incident reports and a SMU denial that he should be placed in general population; S.I.S. Folks said, "It's my recommendation you stay here in the SHU."

23. Plaintiff spoke with Acting Captain Wagner on a number of occasions concerning his continued placement in the SHU and that due to no incident reports and a SMU denial that he should be placed in general population; Acting Captain Wagner said, "By policy there is nothing I can do. The Warden can."; on another occasion he said to speak to the A.W. or the Warden."

24. Plaintiff spoke with Assistant Warden Smith on one occasion concerning his continued placement in the SHU and that due to no incident reports and a SMU denial that he should be placed

in general population; plaintiff further told the Assistant Warden of his conversations with Lt. White, S.I.S. Folks and Acting Captain Wagner, that they refused to help, recommend or act; Assistant Warden Smith smiled and walked away.

25. Plaintiff spoke with Warden Flournoy on one occasion concerning his continued placement in the SHU and that due to no incident reports and a SMU denial that he should be placed in general population; plaintiff further reiterated his conversations with Lt. White, S.I.S. Folks, Acting Captain Wagner and Assistant Warden Smith--all cocerning the same refusal to help, recommend or act; further, plaintiff told Warden Flournoy that his continued placement in the SHU was wrong; Warden Flournoy responded, "It is up to region." Plaintiff further told the Warden that his constitutional rights were being violated; the Warden responded, "Sue me," and walked away.

26. Though considered the SHU, the over-flow unit in which the plaintiff was housed in was a regular unit with regular cells (for all intensive purposes); most notably different, was that the cells did not have their own showers as the cells in the SHU did, and the showers in the over-flow unit are in the middle of the unit.

27. The showers in the over-flow unit were clearly visible from most of the cells in that unit.

28. Plaintiff, as well as the rest of the inmates housed in the over-flow unit, had to be escorted to the showers in the unit three times a week.

29. During the plaintiff's stay in the over-flow unit, he noted the lax regard of the officers for protocol and procedures.

30. Plaintiff watched the inmates go to the showers, numerous times, and receive razors from the officer, and then keep the razor[s] by: returning less than the amount allotted, failure of the officer to pick up the allotted razor[s], by passing the razor[s] to another shower and then claiming to not have received any razor[s] when the officer came to retrieve them, or by just refusing to return them.

31. Plaintiff asserts that on several occasions while housed in the over-flow unit at FDC Tallahassee, that he was escorted to the shower, given razors [multiple], and that they were not retrieved as necessary by policy (an officer failed to return for them).

32. While showering in the over-flow unit's showers, plaintiff was aware of the inmates passing and hiding razors in attempts to avoid collection.

33. While housed in the over-flow unit at FDC Tallahassee, an inmate desiring to go to recreation will be removed from his cell and escorted out of the unit to a special recreation area with multiple cages.

34. At about 8:00 am on May 11, 2012, plaintiff was at his cell-door window and was watching inmates being taken out for recreational purposes; Officers were searching some inmates, but not others, wanding some inmates, but not others, some of the wanding was cursory, some more thorough.

35. At aobut 9:00 am on May 11, 2012, plaintiff was taken out of his cell by Officer Beach for recreational purposes; Officer Beach hand-patted the plaintiff before escorting him

to the front door of the unit where he then did a "cursory" wave over the plaintiff with a hand-held metal detecting wand.

36. Officer Harvey then secorted plaintiff from the front of the unit to the recreation cage; inmates Voterburg and Lacy were already in the recreation cage and handcuffed.

37. Officer Harvey then placed the plaintiff in the cage with inmates Voterburg and Lacy and then locked the cage door. The plaintiff's handcuffs were first removed, then inmate Voterburg, and last came inmate Lacy's; the plaintiff then took off his jump suit and hung it on the fence.

38. Plaintiff moved to the fence and began a conversation with inmate Raimond who was in the next cage.

39. While speaking with inmate Raimond through the fence, the plaintiff was cut across the right side of his face, twice from behind. "Upon information and Belief" the plaintiff asserts he was cut with 2 razor blades that were melted into the handle of a toothbrush.

40. The plaintiff turned around and saw both inmates were looking at him; the plaintiff backed up to the fence and called for the Recreation Officer, Ms. Inge.

41. When Ms. Inge arrived, the plaintiff then asked her to call medical for him; Ms. Inge called the Operations Lt. Mr. White; plaintiff was then escorted to medical.

42. P.A. ("Pysicians Assistant") Perkins cleaned most of the blood off of the plaintiff and held pressure on his cuts until E.M.T.'s ("Emergency Medical Technicians") showed up and then placed him in the back of an ambulence and took

him to Tallahassee Memorial Healthcare.

43. While at Tallahassee Medical Healthcare, the plaintiff received 258 stiches in the right side of his face (cheek) and his right ear (which was cut all the way through).

44. Plaintiff asserts that he is permantly scarred and emotionally traumatized and will never, ever look the same.

45. Concerning his stay up and to the event of May 11, 2012, plaintiff asserts that on multiple occasions he noted Officer Beach, Officer Harvey, Officer Chambers and Officer Inge each forego procedural policy and pass out more than (multiple) razors at one time during showers.

46. Plaintiff also noted Officer Beach, Officer Harvey, Officer Chambers and Officer Inge each forego procedural policy and fail to collect the alloted razor[s] passed out during showers, and/or fail to collect the razor[s] at all.

47. Concerning his stay up and to the event of May 11, 2012, plaintiff asserts that on multiple occasions he noted Officer Beach, Officer Harvey, Officer Chambers and Officer Inge each forego procedural policy and fail to properly patdown (search) inmates going to recreation, if at all.

48. Plaintiff also noted Officer Beach, Officer Harvey, Officer Chambers and Officer Inge each forego procedural policy and fail to properly "wand" (metal detect) inmates going to recreation, if at all.

49. "Upon Information and Belief", in approximately the month of November 2012, the plaintiff was then transferred to the United States Penitentiary ("U.S.P.") Canaan in Waymart

Pennsylvania, where he is currently incarcerated.

50. During the month of April 2013, without notification or preparation, the plaintiff was placed in transit and transferred to F.D.C. Oklahoma City for a brief stay and then retruned to F.D.C. Tallahassee.

51. While at F.D.C. Tallahassee, the Plaintidd was taken from his cell one day and escrorted to the Lt's Office, where the following Prison Officials were present:

    a) S.I.S. Lt Folk,

    b) Lt White,

    c) United States Attorney "John Doe #3",

    d) F.B.I. Agent "John Doe #4".

52. During this meeting, the prosecuting Attorney said that the Plaintiff was brought to see if he would be willing to testify against his attacker; plaintiff politely refused for a number of reasons, first and foremost due to the inherent political atmosphere as relates to a prisoner's health and safty while incarcerated.

53. Plaintiff was then in transit for, "Upon Information and belief" for two months before getting back to U.S.P. Canaan; plaintiff believes that the length of transit was retaliation due to refusing to aid legal pursuit and/or culpability of the plaintiff's attackers and because the plaintiff planned on following through with his legal claims.

## CLAIMS FOR RELIEF

54. The failure of Officer Chambers, Officer Harvey, Officer Beach and Officer Inge to act on their knowledge of sustantial risk or serious harm to plaintiff and other inmates by failing to follow policy and procedure in that they passed out more than one [multiple] razor[s] to inmates on numerous occasions, and then failed to retrieve and account for such razor[s], and as such violated the plaintiff's Eighth Amendment right to be free from deliberate indifference to his safety, to be free from cruel and unusual punishment, and to be free of the defendant's failure to protect the plaintiff.

55. The failure of Officer Chambers, Officer Harvey, Officer Beach and Officer Inge, as employees of the United States of America, to breach their duties and conforming to such standard of conduct concerning razor accountability, is cause in fact and a reasonably close causal connection to the plaintiff's injury in which he received 258 stiches.

56. The failure of Officer Chambers, Officer Harvey, Officer Beach and Officer Inge to act on their knowledge of substantial risk or serious harm to plaintiff and other inmates

- 11 -

by failing to follow policy and procedure in that they failed to properly pat-search and/or "wand" (use the hand held metal detector) on numberous occasions violated the plaintiff's Eighth Amendment right to be free from deliberate indifference to his safety, to be free from cruel and unusual punishment, and to be free of the defendant's failure to protect the plaintiff.

57. The failure of Officer Chambers, Officer Harvey, Officer Beach and Officer Inge, as employees of the United States of America, to breach their duties and conforming to such standard of conduct concerning properly pat-searching and "wanding" inmates going to recreation from SHU, is cause in fact and a reasonably close causal connection to the plaintiff's injury in which he received 258 stitches.

58. The failure of Officer Beach and Officer Harvey to act on their knowledge of substantial risk or serious harm to plaintiff, whose status was "transeg" (no greater than Administrative Detention equivalent), by noting and assigning plaintiff to a recreation cell with "Upon Information and Belief" SMU Status inmates, is a violation of plaintiff's Eighth Amendment rights to be free from deliberate indifference to his safety, to be free from cruel and unusual punishment, and to be free from the defendant's failure to protect the plaintiff.

59. The failure of Officer Beach and Officer Harvey, as employees of the United States of America, to breach their duties and conforming to such standard of conduct concerning placing certain status[ed] inmates with other status[ed] inmates in recreation cages from SHU, in that it was cause in fact and

a reasonably close causal connection to the plaintiff's injury in which he received 258 stitches.

60. The failure of Lt. White, Acting Captain Wagner, S.I.S. Folks, Assistant Warden Smith, and Warden Flournoy to act on their knowledge of policy and procedure, due process in fact, and such knowledge of substantial risk or serious harm to plaintiff, by refraining and refusing, without procedural or due process cause, to place plaintiff in general population, and to keep plaintiff in such quarters in which inmates with such status as SMU referals for violence and such, violated the plaintiff's Eighth Amendment right to be free from deliberate indifference to his safety, to be free from cruel and unusual punishment, and to be free of the defendant's failure to protect the plaintiff.

61. The failure of Lt. White, Acting Captain Wagner, S.I.S. Folks, Assistant Warden Smith, and Warden Flournoy, as employees of the United States of America, to breach their duties and conforming to such standards of conduct concerning placement in general population and mixing of status[es], is cause in fact and a reasonably close causal connection to the plaintiff's injury in which he received 258 stitches.

## RELIEF REQUESTED

WHEREFORE, plaintiff request that the court grant the following relief:

A. Award compensatory damages in the following amounts:

1. $100,000 jointly and severly against defendants Warden Flournoy, Assistant Warden Smith, S.I.S. Folks, Acting Captain Wagner, Lt. White, Officer Chambers, Officer Harvey, Officer Beach, and Officer Inge for the physical and emotional injuries sustained as a direct result of deliberate indifference, in failing to protect, from cruel and unusual punishment, as provided by the Eighth Amendment.

2. $100,000 against defendant United States of America, in that as employees of the United States of America, Warden Flournoy, Assistant Warden Smith, S.I.S. Folks, Acting Captain Wagner, Lt. White, Officer Chambers, Officer Harvey, Officer Beach, and Officer Inge, had duties of which they breaced which were the proximate cause of plaintiff's injuries of which 258 stitches resulted.

B.  Award Punited damages in the following amounts:

1. $20,000 each against defendants Warden Flournoy, Assistant Warden Smith, S.I.S. Folks, Acting Captain Wagner, Lt. White, Officer Chambers, Officer Harvey, Officer Beach, and Officer Inge.

C.  Grant such other relief as it may appear that plaintiff is entitled to.

Respectfully Submitted,

Date: March 17th 2014

Jimmy Wakefield, Pro se
Reg. #16902-056
U.S.P. Canaan
P.O. Box 300
Waymart, PA  18472

## CERTIFICATE OF SERVICE

I, Jimmy Wakefield, hereby certify that I furnished a true and accurate copy of "Third Amended Civil Rights Complaint Pursuant to Bivens and FTCA" to the below named by placing said document in the prison's internal legal mailing system on _March 17th_, 2014, postage pre-paid, first class, addressed to:

Pamela C. Marsh, USA
/s/ Winifred L. Acosta NeSmith, AUSA
111 N. Adams St. Fourth Floor
Tallahassee, FL   32301-7730

_____
Jimmy Wakefield) Pro se
Reg. # 16902-056
P.O. Box 300
Wayamrt, PA   18472

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this _17th_ day of _March_, 2014.

_____
Jimmy Wakefield

- 15 -

Jimmy Wakefield #19903956
United States Penitentiary - Canaan
P.O. Box 300
Waymart, PA 18472



JACKSONVILLE FL 21 MAR 2014

*LEGAL MAIL*

Clerk of COurt
United States District Court
Northern District of Florida
Office of the CLerk
401 S.E. 1rst Avenue, Suite 243
Gainesville, FL 32601-6805



Date: 3.19.14
The enclosed letter was processed through special mailing procedures for forwarding to you. The letter has been neither opened nor inspected. If the reader raises a question or problem over which this facility has jurisdiction, you may wish to return the material for further information or clarification.
UPS Canaan
P.O. Box 400
Waymart, PA 18472