IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

JIMMY WAKEFIELD,

    Plaintiff,

v.                                                      CASE NO. 4:13-cv-339-WS-GRJ

UNITED STATES OF AMERICA,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Pending before the Court is Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint or in the Alternative, a Motion for Summary Judgment. (Doc. 66.) Plaintiff has filed a response in opposition (Doc. 68) and, therefore, the motion is ripe for consideration. For the reasons discussed below, Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint or in the Alternative, a Motion for Summary Judgment, Doc. 66, is due to be **GRANTED** in part and **DENIED** in part.

### I. BACKGROUND

In Plaintiff's Third Amended Complaint, Doc. 47, Plaintiff purports to assert causes of action under the Federal Tort Claims Act ("FTCA") and pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971)[hereinafter "*Bivens*"]. The suit arises from an attack on Plaintiff at the Federal Detention Center Tallahassee ("FDC").  According to Plaintiff, he was placed in the Special Housing Unit ("SHU") of the FDC based on his classification as a transfer prisoner under segregation status. (Doc. 47 at 4.)  On May 11, 2012, Plaintiff was taken from his cell by Officer Beach for recreation.  (Doc. 47 at 7.)  Officer Beach patted

Plaintiff down with his hands and then waved a hand-held metal detecting wand over him. (Doc. 47 at 7-8.) Officer Harvey then took Plaintiff and led him to the recreation cage, where inmates Voterburg and Lacy were already located. (Doc. 47 at 8.) All three prisoners remained handcuffed. (Doc. 47 at 8.) Officer Harvey removed Plaintiff's handcuffs, and then removed the handcuffs on inmate Voterberg and inmate Lacy. (Doc. 47 at 8.) Plaintiff moved to the fence and started a conversation with inmate Raimond, who was placed in an adjacent cage. (Doc. 47 at 8.) Plaintiff alleges that while he was speaking with inmate Raimond, he was cut twice across the right side of his face from behind. (Doc. 47 at 8.) FDC staff took Plaintiff to the medical unit where he was escorted by ambulance to Tallahassee Memorial HealthCare. (Doc. 47 at 8-9.) Plaintiff received 258 stitches on the right side of his face and his right ear. (Doc. 47 at 9.)

FDC staff investigated the inmates involved in the attack and recreation cage where the attack occurred and recovered a melted toothbrush with a piece of razor inserted into the plastic, which was hidden in an inmate's buttocks, and a piece of razor located in the drain pipe of the recreation cage. (Doc. 66 at 2.)

Liberally construed,[1] Plaintiff's Third Amended Complaint purports to assert four claims: (1) that the Defendants, along with the rest of the staff at FDC, negligently failed to abide by the prisons's razor policy, (2) negligently failed to adhere to the prison's policy of searching inmates before moving them, (3) negligently placed him in the wrong housing assignment, and (4) failed to protect him from other inmates in violation of his

---

[1] *Haines v. Kerner*, 404 U.S. 519 (1972); see also *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981).

Eighth Amendment Rights. The Court interprets Plaintiff's Third Amended Complaint as asserting three claims for negligence against the United States under the FTCA and *Bivens* claims against Defendants Warden Flournoy, Assistant Warden Smith, S.I.S. Folks, Acting Captain Wagner, Lt. White, Officer Chambers, Officer Harvey, Officer Beach, and Officer Inge for violation of his Eighth Amendment rights.

## II. MOTION TO DISMISS AND SUMMARY JUDGMENT STANDARDS OF REVIEW

For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom. *See, e.g., Jackson v. Okaloosa County, Fla.*, 21 F.3d 1532, 1534 (11th Cir.1994). Furthermore, the Court must limit its consideration to the complaint and written instruments attached as exhibits. Fed R. Civ. P. 10(c); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir.1993).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court articulated a two-pronged approach for evaluating a motion to dismiss under Rule 12(b)(6): The court must first determine what factual allegations in the complaint are entitled to a presumption of veracity, and then assess whether these facts give rise to an entitlement for relief. In determining whether factual allegations are entitled to the presumption of truth, the Court stated that it was not whether the facts are "unrealistic or nonsensical" or even "extravagantly fanciful," but rather it is their conclusory nature that "disentitles them to the presumption of truth." *Iqbal*, 556 U.S. at 681. Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007).

"While the pleadings of *pro se* litigants are 'liberally construed,' they must still comply with procedural rules governing the proper form of pleadings." *Hopkins v. Saint Lucie County School Bd.,* 2010 WL 3995824, **1 (11th Cir. 2010) (unpublished) (citations omitted) (applying pleading standards of *Iqbal* and *Twombly* to *pro se* complaint).

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the non-moving party." *Samples on Behalf of Samples v. Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988).  "In determining whether summary judgment is appropriate, [the Court is] required to draw all reasonable inferences in favor of the non-moving party, not all *possible* inferences." *Horn v. United Parcel Services*, Inc. 433 F. App'x 788, 796 (11th Cir. 2011) (emphasis added).  As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987).  The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.

## III. DISCUSSION

### A. Plaintiff's Claims under the Federal Tort Claims Act

#### 1. The Discretionary Function Exception

Defendants have moved to dismiss Plaintiff's three negligence claims under the FTCA on the grounds that the Court lacks subject-matter jurisdiction under the "discretionary function" exception to the FTCA. The FTCA provides a limited waiver of the sovereign immunity of the United States in cases involving torts committed by federal government employees. 28 U.S.C. § 2674. The FTCA, however, contains a statutory exception which retains sovereign immunity for "any claim based upon....the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). If the conduct implicated in any of the claims presented in the Third Amended Complaint falls within the "discretionary function exception," this Court will lack subject-matter jurisdiction over those claims.

The "discretionary function exception" applies when the nature of the conduct involves an 'element of judgment or choice.' *Ochran v. United States*, 117 F.3d 495, 499-500 (11th Cir. 1997). If the conduct does involve judgment or choice, the next inquiry is whether that judgment is grounded in considerations of public policy. *Id.* In making this determination, the court must consider whether the challenged conduct is 'of the kind that the discretionary function exception was designed to shield.' *United*

*States v. Gaubert*, 499 U.S. 315, 322-23 (1991).  If the conduct meets both of these qualifications, it falls within the discretionary function exception to the FTCA and federal courts lack subject-matter jurisdiction to decide the case.  However, if an agency sets regulations or guidelines that mandate particular conduct, and the employees violate those regulations or guidelines, the discretionary function exception will not protect the United States from liability.  *See Cohen v. U.S.*, 151 F.3d 1338, 1344-45 (11th Cir. 1998); *Garza v. U.S.*, 161 F. App'x 341, 344 (5th Cir. 2005).

At issue in this case are three of the policies set by the Bureau of Prisons, Tallahassee Division.  These policies are announced through Post Orders, which are the guidelines implemented by the Bureau of Prisons for each respective facility.  (Doc. 66-2 at 1, Declaration of Capt. McCollough.)

The first policy at issue is the policy of handing out razors to inmates, which is established in the Tallahassee Post Order, effective December 19, 2011, which provides as follows:

> THE ONLY TIME INMATES WILL BE ALLOWED A RAZOR IS WHEN THEY TAKE A SHOWER AND UPON THEIR REQUEST.  ONLY ONE RAZOR WILL BE ISSUED AT A TIME.  THE RAZOR MUST BE RETRIEVED PRIOR TO THE INMATE EXITING THE SHOWER.  RAZORS ARE NOT AUTHORIZED ANYWHERE ELSE BUT THE SHOWERS.  A RUNNING COUNT OF RAZORS IN THE UNIT WILL BE KEPT IN THE RAZOR ISSUE LOG BOOK.  USED RAZORS ARE TREATED AS HOT TRASH.

(Doc. 66-2 at 3, Declaration of Capt. McCollough)[hereinafter "razor policy"].

The next policy relevant to Plaintiff's claims is the FDC's policy concerning inmate movement and search, established in the Tallahassee Post Orders, effective

December 19, 2011. This Post Order provides as follows:

> Whenever an inmate is removed from his cell, he is required to place his hands through the food slot and submit to hand restraints. The hand restraints will be double locked. If the inmate is housed with another inmate, both inmates will be placed in hand restraints with their backs facing the door and the inmate who is being removed from the cell, will be controlled by the officer and directed to back out of the cell.
> If two (2) inmates are assigned to a cell, two staff will always be present prior to removing an inmate. This allows for the inmate who is being removed to be controlled by a staff member at all times while the second officer is removing the hand restraints from the inmate who remains in the cell. All inmates who are removed from the cell are pat searched and a hand-held metal detector utilized for screening. Additionally, staff should always pay close attention to inmates shoes...

(Doc. 66-2 at 2, Declaration of Captain McCollough)[hereinafter "search policy"].

Finally, the last policy relevant to Plaintiff's claims is the policy assigning inmates to the "SHU." This policy is established in the Code of Federal Regulations (28 C.F.R. § 541.23) and provides as follows:

> "541.23 Administrative detention status. You may be placed in administrative detention status for the following reasons:
> (A) Pending Classification or Reclassification. You are a new commitment pending classification or under review for Reclassification.
> (B) Holdover Status. You are in holdover status during transfer to a designated institution or other destination.
> (C) Removal from general population. Your presence in the general population poses a threat to life, property, self, staff, other inmates, the public, or to the security or orderly running of the institution and:
> > (1) Investigation. You are under investigation or awaiting a hearing for possibly violating a Bureau regulation or criminal law;
> > (2) Transfer. You are pending transfer to another institution or location;
> > (3) Protection cases. You requested, or staff determined you need, administrative detention status for your own protection; or
> > (4) Post-disciplinary detention. You are ending confinement in disciplinary segregation status, and your return to the general population would threaten the safety, security, and orderly operation of a correctional facility, or public safety."

28 C.F.R. § 541.23, Special Housing Units [hereinafter "housing policy"].

Defendants claim that all three policies fall within the discretionary function exception of the FTCA, and thus the Court does not have subject-matter jurisdiction over this matter. Plaintiff claims that Defendants, and the FDC staff in general, have not followed these policies correctly and thus are not entitled to the benefit of the discretionary function exception.

All three of the above policies listed in the Tallahassee Post Orders meet the two part test for determining discretionary function. The decision of whether to give inmates razors for showers, how to search the inmates and secure them for movement, and how to designate inmates for special housing all involve the judgment or choice of the B.O.P. Furthermore, these decisions are clearly the type of policy decisions that the discretionary function exception is meant to protect. The issue, however, is whether the FDC staff actually followed each of the three policies in the Post Orders. The Court will separately address each party's claims with respect to each of the three policies.

With respect to the B.O.P.'s razor policy, Plaintiff produced an affidavit that asserts that during his time at the FDC, he saw inmates retain the razors distributed by hiding them, returning fewer razors than given, deceiving guards into believing they received no razors, or simply keeping them when an officer did not return to collect the razors. (Doc. 47 at Exhibit D.) In their motion, Defendants admit to distributing more than one razor to inmates who asked, in spite of the razor policy's clear mandate that inmates should only receive one razor. (Doc. 66 at 11-12.) Thus, because there is a

dispute concerning whether the employees of the FDC properly followed their own razor policy, the Court cannot conclude at this stage of the case that the discretionary function exception is applicable and, therefore, Defendant's request to dismiss Plaintiff's claims for lack of subject matter jurisdiction concerning Plaintiff's claim for negligence regarding the B.O.P.'s razor policy is due to be denied.

With regard to the B.O.P.'s search policy, Plaintiff claims that he saw prison officials pat-searching and wanding some inmates before releasing them to recreation, but not other inmates. (Doc. 47 at 7, Doc. 47 at Exhibit D, Doc. 68 at 8.) Plaintiff also contends that camera footage of the inmates being taken out for recreation on the day of his attack would demonstrate that not all inmates were pat-searched or wanded. (Doc. 68 at 9.) In response, Defendants present an affidavit from Officer Beach claiming that he follows the appropriate policies and procedures during every escort. (Doc. 66-2 at Exhibit 3.) The parties' claims reflect that there is a factual dispute regarding whether Defendants complied with their search policy, and therefore Defendant's motion is due to be denied as to this claim.

The conclusion is different, however, with respect to the B.O.P.'s housing policy. Plaintiff contends that he was an inmate of "transeg" status, meaning that he was a transfer from another prison under segregation status. (Doc. 47 at 4.) By Plaintiff's own admission, he qualified for administrative detention in the Special Housing Unit pursuant to 28 C.F.R. § 541.23(C)(2). The B.O.P.'s policy designating inmates to detention in the SHU is a matter of judgment grounded in policy decisions that is shielded by the

discretionary function exception. Because FDC employees properly followed the appropriate regulations and assigned Plaintiff to the SHU, they are entitled to the protection of the discretionary function exception. Accordingly, because the claim is subject to the discretionary function exception the Court does not have subject-matter jurisdiction over this claim. Any claim related to violating the housing policy is, therefore, due to be dismissed from the case.

In sum, the Court concludes that there is a factual dispute regarding whether the FDC followed its Post Orders concerning the razor policy and the search policy. As a result, the government is not entitled to the benefit of the discretionary function exception with respect to Plaintiff's negligence claims concerning those policies at this time, and the Court retains subject-matter jurisdiction over those two claims. On the other hand, the FDC clearly followed the B.O.P. housing policy with respect to Plaintiff's housing placement and, thus, the discretionary function exception applies to that claim. Plaintiff's claim in that regard is due to be dismissed.

### 2. Negligence

Defendants also move to dismiss Plaintiff's Third Amended Complaint for failure to state a claim for negligence. In this FTCA case, Florida law is controlling. In Florida, a plaintiff states a valid claim for negligence if he asserts that the Defendant (1) owed a duty of care towards Plaintiff, (2) breached that duty of care, (3) the breach caused Plaintiff's injuries, and (4) the Plaintiff was harmed. *See, e.g.*, *Whitt v. Silverman*, 788 So.2d 210 (Fla. 2001); *McCain v. Florida Power Corp.*, 593 So.2d 500 (Fla. 1992).

The Court concludes that Plaintiff has sufficiently alleged a *prima facie* claim for both of his claims of negligence under Florida law.  With regard to Plaintiff's first claim, that FDC staff was negligent for failing to follow its razor policy, Plaintiff alleges that the FDC staff had a general duty to protect its inmates, citing 18 U.S.C. § 4042. This provision provides that "the Bureau of Prisons...shall...provide for safekeeping, care, and...protection...of all persons charged with or convicted of offenses against the United States." Plaintiff also says that the prison officials had a duty to keep the prisoners safe by following their razor policy and keeping track of the razors distributed in the prison. Plaintiff alleges that the FDC prison officials breached that duty by passing out multiple razors to inmates and failing to retrieve and account for those razors. He asserts that this breach caused his injury by enabling inmates to keep razors in their possession, which led to his attack in the recreation cage. Finally, Plaintiff asserts that he was gravely injured by the attack resulting in 258 stitches on his face, which remains scarred.

Additionally, Plaintiff claims that FDC staff was negligent for failing to abide by their search policy.  He claims that the Post Orders created a duty for prison officials to search each inmate by patting them down and wanding them before taking them to recreation. Plaintiff contends that the officials breached their duty by failing to search each inmate before releasing them in the recreation cages.  *Id.*  He then asserts that these breaches caused his injury by enabling inmates to bring razors into the recreation cages, which led to his attack. Lastly, Plaintiff asserts that he was gravely injured by the

attack, resulting in 258 stitches to his face and continued scarring. Viewing these allegations in the light most favorable to Plaintiff – as the Court must at this stage of the case – Plaintiff has stated two viable claims for negligence and, therefore, Defendant's motion to dismiss Plaintiff's claims for failure to state a cause of action is due to be denied.

    Furthermore, Defendants are not entitled to summary judgment on these two claims because, as previously discussed, there is a factual dispute regarding whether the FDC properly followed its razor distribution policy and inmate searching policy. Accordingly, Defendants' request for summary judgment at this time is due to be denied.

**B. Plaintiff's *Bivens* Claims**

    Defendants move to dismiss Plaintiff's *Bivens* claims for failure to exhaust his administrative remedies. Section 1997e(a) of the Prisoner Litigation Reform Act ("PLRA") requires that before bringing an action under any federal law, a prisoner must exhaust all his available administrative remedies. 42 U.S.C. § 1997e(a).

    The B.O.P. operates an Administrative Remedy Program ("ARP") available for use by all inmates housed in their facilities. 28 C.F.R. § 542.10-542.19. Under the ARP, prisoners must first present an issue of concern informally to staff before submitting a Request for Administrative Remedy. 28 C.F.R. § 542.13. If the issue is not resolved, the prisoner may submit a formal written Request for Administrative Remedy. 28 C.F.R. § 542.14. If the inmate is not satisfied with the response to his

Request for Administrative Remedy, he may submit an Appeal to the appropriate Regional Director within 20 days.  28 C.F.R. § 524.15.  Finally, when an inmate is not satisfied by the response from the Regional Director, he may submit an Appeal to the General Counsel in the Central Office.  28 C.F.R. §  542.15.  An inmate must complete all of these steps to fully exhaust his administrative remedies through the ARP.

Plaintiff filed a Request for Administrative Remedy on August 8, 2012, alleging that the staff was deliberately indifferent and negligent and had violated his constitutional rights by allowing the assault earlier that year.  (Doc. 47 at Exhibit A, Doc. 66-4 at Exhibit 4.)  The warden responded to the request on August 22, 2012. *Id.*  Plaintiff appealed the response and filed with the Regional Office on August 28, 2012.  (Doc. 47 at Exhibit B, Doc. 66-4 at Exhibit 4.)  The Regional Director responded on January 17, 2013. *Id.*  Plaintiff claims that he filed a timely appeal to the General Counsel, but has not yet received a response.  (Doc. 68 at 18.)  Defendants' Declaration of Marquitta Franklin evidences that Plaintiff did not appeal the remedy by filing at the last level with the Central Office. (Doc. 66 at Exhibit 4.)

Exhaustion is an affirmative defense for which the defendant bears the burden of proof.  *Jones v. Bock*, 549 U.S. 199 (2007).  Defendants have produced an affidavit from the Associate Warden's Secretary, who tracks the administrative remedy requests from FCI Tallahassee. (Doc. 66-4 at Exhibit 4.)   She avers that her records show that Plaintiff did not appeal his response from the Regional Director. *Id.*  An affidavit confirming that the record establishes the lack of exhaustion can be sufficient to carry

Defendants' burden of proof.  *See, e.g.*, *Rebaldo v. Jenkins*, 660 F.Supp.2d 755, 763 (E.D. La. 2009).  Accordingly, the Court concludes that Defendants have met their burden of proof and that Plaintiff's *Bivens* claims should be dismissed for failure to exhaust administrative remedies prior to bringing suit.

Assuming, however, that Plaintiff's claims under *Bivens* are not subject to dismissal for failure to exhaust, Plaintiff's claims, nonetheless, should be dismissed for failure to state a claim against Defendants for violation of his Eighth Amendment rights. "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003)(quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)) (omission in original).  "It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. For a prison official to be constitutionally liable for failing to protect the safety of an inmate, the prisoner must produce "sufficient evidence of (1) a substantial risk of serious harm; (2) the defendant's deliberate indifference to that harm; and (3) causation." *Id.* (quoting *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995)).  Deliberate indifference requires a showing that the defendant official "must have been 'subjectively aware of the substantial risk of serious harm in order to have had a sufficiently culpable state of mind." *Id.* (quoting *Farmer*, 511 U.S. at 834-38) (internal quotations omitted).

Even viweing the pleadings in the light most favorable to Plaintiff, it is evident that Defendants subjectively had no idea that inmates Lacy and Voterburg posed a threat to

Plaintiff.  At the time of the attack, Plaintiff had no separation order in effect that would notify staff that any other inmate at FDC posed a threat to Plaintiff.  (Doc. 66-2 at Exhibit 2.)  In his Third Amended Complaint, Plaintiff states that while in the SHU, he had "no incident reports," and thus staff would not be placed on notice of any problems Plaintiff had with other inmates. Furthermore, Plaintiff does not allege in his Third Amended Complaint any other incidents or details of any other incidents that would suggest Plaintiff was in any danger from either inmate Lacy or Voterburg. Simply put, there are no facts alleged by Plaintiff that would suggest a reason for any of the FDC staff to be aware of a substantial risk of serious harm to Plaintiff.  The Court, therefore, concludes that Plaintiff has failed to allege facts demonstrating that Defendants subjectively knew of a substantial risk that he would be harmed. Accordingly, independent of Plaintiff's failure to exhaust, Plaintiff has failed to state a *Bivens* claim against Defendants Flournoy, Smith, S.I.S. Folks, Wagner, White, Chambers, Harvey, Beach, and Inge because there are no allegations that they were or should have been aware that Plaintiff was in danger from either inmate Lacy or Voterbrug. Plaintiff's *Bivens* claims against the individual Defendants are therefore due to be dismissed.

### IV.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that Defendants' "Motion to Dismiss Plaintiff's Third Amended Complaint or in the Alternative, a Motion for Summary Judgment" (Doc. 66) should be **GRANTED** with respect to Plaintiff's *Bivens* claims against Defendants Flournoy, Smith, S.I.S. Folks, Wagner, White,

Chambers, Harvey, Beach, and Inge and with respect to Plaintiff's FTCA negligence that the United States is liable for failing to follow the B.O.P.'s housing policy. In all other respects Defendants' motion should be **DENIED** and the case should continue solely with respect to Plaintiff's FTCA negligence claims that the United States violated the B.O.P.'s razor policy and search policy.

**IN CHAMBERS** this 16th day of October 2014.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge