IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**JIMMY WAKEFIELD,**
    **Plaintiff,**

vs.                                                    **Case No. 04:13cv-339-WS/GRJ**

**UNITED STATES OF AMERICA,**
    **Defendant**.
_____/

## **DEFENDANT's MOTION FOR SUMMARY JUDGMENT**

COMES NOW the Defendant, the United States of America, by and through its counsel, the United States Attorney for the Northern District of Florida, and respectfully moves this Court to dismiss the Plaintiff Jimmy Wakefield's (Plaintiff) Third Amended Complaint (Complaint) pursuant to the Federal Rules of Civil Procedure 12(b)(6) and 56.

## **INTRODUCTION**

While an inmate at the Federal Detention Center in Tallahassee, Florida, Plaintiff was attacked by another inmate(s). Plaintiff alleges a negligence claim against the United States pursuant to the Federal Tort Claims Act (FTCA) for failing to protect him. Plaintiff claims that Defendant, through the Bureau of Prisons, failed to adhere to its search and razor policies and thereby, caused his injuries. Defendant hereby seeks dismissal of the Complaint pursuant to the Federal Rules of Civil Procedure 12(b)(6) and 56.

## **STANDARD OF REVIEW**

When faced with a motion for summary judgment, the non-movant bears the burden of coming forward with sufficient evidence that proves every element of a claim on which such non-movant has the burden of proof. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 106 S.Ct. 2505 (1986); *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548 (1986). The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact dispute with respect to those issues

on which the movant bears the burden of proof. For any matter on which the non-movant carries the burden of proof, the movant may, by merely pointing to the absence of evidence supporting the essential elements of the non-movant's case, shift to the non-movant the burden of demonstrating by competent summary judgment evidence that there is an issue of material fact so as to warrant a trial. *Celotex*, 477 U.S. at 322-23; 106 S.Ct. at 2552.

The non-movant's burden *may not* be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Matsushita v. Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348 (1986). The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Mere existence of some alleged factual dispute will not defeat Defendants' properly supported motion for summary judgment. The factual dispute must be material, meaning it must change the outcome of the case. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir. 1991).

The Court's inquiry in ruling on Defendants' motion for summary judgment unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that Plaintiff is entitled to a decision in his favor. *Anderson,* 477 U.S. at 247-252; 106 S.Ct. at 2509-2512. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.,* 477 U.S. at 249; 106 S.Ct. at 2511.

## **ARGUMENTS SUPPORTING DISMISSAL**

### ***Plaintiff's FTCA Claims Should Be Dismissed Due to the Lack of an Actionable Breach of Duty and Causation.***

In actions brought pursuant to the FTCA, the government's liability is determined in accordance with the law of the place where the act or omission occurred. *28 U.S.C. § 1346(b)*; *Doe v. United States*, 718 F.2d 1039, 1042 (11th Cir. 1983). Thus, the applicable law in this matter would be

that from which flows from the state of Florida. To prevail in a negligence action in the state of Florida, Plaintiff must establish that the government owed him a duty, the government breached that duty, the breach was the proximate cause of his injuries, and that he suffered damages as a result of those injuries. *Cintron v. Osmose Wood Preserving, Inc.,* 681 So.2d 859 (Fla. 5th DCA 1996), citing *Simon v. Tampa Elec. C.,* 202 So.2d 209 (Fla. 2d DCA 1967).

Pursuant to Title 18 U.S.C. §4042, the legislature imposes a general duty of care to safeguard prisoners on the BOP. Although the statute clearly sets forth a "mandatory duty of care, it does not, however, direct the manner by which the BOP must fulfill this duty." *Calderon v. United States,* 123 F.3d 947, 950 (7th Cir.1997). Thus, BOP officials have discretion in deciding how to accomplish these objectives. See *Cohen v. United States*, 151 F.3d 1338, 1342 (11th Cir. 1998). Further, the duty owed to the federal inmate is one of "ordinary diligence to keep prisoners safe and free from harm and the BOP is "not an insurer of the safety of the prisoner." *Jones v. U.S.*, 534 F.2d 53 (5th DCA 1976) (*citations omitted*). In disputes between inmates, it is clear that pursuant to the FTCA, BOP could be negligent in fulfilling their duties under §4042 if the BOP "knew or reasonably should have known of a potential problem" between inmates. *Rich v. U.S.*, 2014 WL 2778652 (N.D.W.Va. June 19, 2014), quoting *Parrott v. United States*, 536 F.3d 629, 637 (7th Cir. 2008). Florida law provides that "[t]he duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader 'zone of risk' that poses a general threat of harm to others." *McCain v. Fla. Power Corp.*, 593 So.2d 500, 502 (Fla. 1992).

Accordingly, to satisfy the second prong of a negligence cause of action, "a plaintiff must show the injury to have been a reasonably foreseeable consequence of the custodian's negligence." *Fields v. United States of America,* 2013 U.S. Dist. Lexis 126796, *11 (MDFL, September 5, 2013 (Case no. 5:11-cv-8-Oc-29PRL)), quoting *Dep't of Health & Rehab. Servs. v. Whaley,* 574 So.2d 100, 103-4 (Fla. 1991). In *Jones*, the Fifth District Court of Appeals, examined the need to protect an inmate

against an unreasonable risk and explained the importance of the prison's lack of knowledge of danger as follows:

> At no time prior to the assault had the personnel in Atlanta been advised directly or indirectly of any problems existing between [plaintiff] Jones and another inmate. Jones had not requested special protection or segregation from the general inmate population. On the night of the attack, there had been no extraordinary incidents in the institution. There was no apparent group tension and no other problems had been observed by the correctional staff.

*Jones*, 534 F.2d at 54.

Also, in *Fields*, where an inmate threw bowls at the victim inmate and another inmate subsequently stabbed victim inmate, the Middle District of Florida granted the Defendant's Motion for Summary Judgment with respect to the Plaintiff's FTCA claim on the grounds that "[t]he evidence reveals that the inmate's attack on Plaintiff was not reasonably foreseeable and fails to satisfy the second element of a negligence claim." *Fields*, *13. The court further found that "the undisputed evidence reveals that as soon as the officer was aware of the attack, officers immediately responded to intervene." *Id.* In the case at hand, the BOP was not aware of any threats or perceived threats between Plaintiff and his attackers. (Exhibit B: Declaration of Capt. McCollough dated May 1, 2015; Doc 66-Exh 1, 2:7; Doc 66-Exh 2, 4:12; Doc 66-Exh 3, 2:8) Thus, the BOP staff was unaware of any potential problems between Plaintiff and his attackers. (Exhibit B) Plaintiff and the Attacker[1] (inmate who attacked him) had been prior cellmates without any prior fights or arguments. (Exhibit A: Deposition Transcript of Plaintiff, 51:6-10) Plaintiff has also admitted that he "did not believe that anybody knew it [the attack] was going to happen." (Id., 41;6-7) Hence, there was no reason for the BOP staff to suspect any problem between Plaintiff and his attackers.

Further, officers also immediately responded to Plaintiff's aid. (Doc 47, 8-9:42-43) In fact,

---

[1] The identity of the Attacker has not been disclosed and has been redacted in the Exhibits and Motion in compliance with the Privacy Act.

Plaintiff alerted an officer who then hit the panic button. (Exhibit A, 67:1-15) Upon hearing the panic button, a Lieutenant and multiple other officers responded to the area and removed Plaintiff from the recreation stage. (Id.) There is no evidence to suggest that there was any delay or deficiency in the officers' response to Plaintiff. Moreover, Plaintiff admits that the BOP nurse "did the best she could" while treating Plaintiff's injuries. (Id., 67:13-17)

Admittedly, Plaintiff "did not believe that anybody knew it [the attack] was going to happen." (Id., 41;6-7) Even more troubling is the fact that Plaintiff failed to notify the BOP staff of the Attacker's plan to take revenge against his "home boy," another inmate. (Id., 61:8-12) Well aware that the Attacker and another inmate who was involved with the attack (referred to, as the Conspirator[2]) were both known to have stabbed people, Plaintiff chose not to report the planned attack to the BOP staff. (Id., 59:23-25; 60:1-6, 21-25; 62:1-7) Although Plaintiff was further aware that the Attacker and the Conspirator had both acquired stolen razors from an orderly, Plaintiff did not report the planned attack to the BOP staff. (Id., 54:4-11) Albeit Plaintiff was aware that an orderly had stolen razors and had been "passing them out like candy," Plaintiff did not report the planned attack to the BOP staff. (Id., 54:12-18) Although Plaintiff was aware that the Attacker possessed a homemade shank, Plaintiff did not report the planned attack to the BOP staff. (Id., 51:11-15) Plaintiff also knew the name of the orderly from whom the stolen razors were obtained, because he knew the orderly from CCI. (Id., 55:5-11) It is undeniable that Plaintiff failed to report the planned attack to BOP staff. (Id., 61:8-12) Consequently, the BOP staff was unaware of the stolen razors and the planned attack which culminated into a deadly combination. (Exhibit B) Thus, Plaintiff's injuries were not reasonably foreseeable given these facts and circumstances.

The BOP staff carried out their general duty to protect Plaintiff. Prior to opening a SHU cell door, the staff members were required to have the inmate turn around and be handcuffed

---

[2] The identity of the Conspirator has not been disclosed and has been redacted in the Exhibits and Motion in compliance with the Privacy Act.

through the food slot.  (Doc 66-Exh 2, 2:5;  Doc 66-Exh 3, 1:4)   If there were two inmates in a cell, both inmates were then placed in hand restraints with their backs facing the door before an inmate was removed from the cell.  (Id.)   Once the inmate who was going to recreation was removed from the cell, the inmate was pat-searched pursuant to Tallahassee's Post Orders for SHU.  (Id.)   A hand-held metal detector was also utilized for a screening of the inmate's person.  (Id.)   Furthermore, the BOP staff had conducted a shakedown of all of the cells and removed contraband prior to the attack.  (Exhibit A, 53:20-23)

Although it is unfortunate that the razors used to attack Plaintiff were not discovered through the pat search and the hand-held metal detector, the most compelling evidence of the staff taking these proactive steps lies in Plaintiff's own allegations.  (Doc. 47, 7-8; 35)   Plaintiff admits that he was pat-searched and subjected to a hand-held metal detector.  (Id.)   Plaintiff's own assertions corroborate the fact that staff members pat-searched the inmates and subjected the inmates to a search via a hand-held metal detector.   Plaintiff simply cannot say that the BOP staff did not search the Attacker and the Conspirator pursuant to the policies.  (Exhibit A, 65:6-15)

Moreover, Plaintiff cannot establish that strict compliance with the search and razor policies would have altered the chain of events on May 11, 2012.   Unfortunately, even strict compliance does not guarantee an absolute 100% success rate in the detection of items which could be used to construct a handmade shank in prison.  The success rate is further frustrated by the fact that an orderly was "passing out razors like they were candy."  (Exhibit A, 54:12-18)   In fact, the Attacker and the Conspirator each possessed these stolen razors which were used to manufacture the shank.  (Id., 54:4-11)   BOP staff would have had a greater chance of recovering the stolen razors, had they been alerted to the fact that the Attacker was planning to attack the other inmate.   Plaintiff, himself admits that there was no prior incident which would have placed Defendants on notice of a substantial risk of harm to him.  (Doc 47, 5-6;21-25)   Thus, there was no indication that there was

6

any threat to Plaintiff.  (Doc 66-Exh 2, 4:12)  And the proactive steps taken by the staff members are indicative of a prudent exercise of their duty to safeguard the inmates. Courts have recognized that even where prison authorities take precautionary measures to maintain order and internal security within the prison system, some fighting in prison (albeit direct attacks on a single inmate) is inevitable.  See *Thompson v. Spears*, 336 F.Supp.2d 1224, 1237 (S.D., Fla., 2004), citing *Parker v. State*, 282 So.2d 483 (La. 1973).

Plaintiff fails to present evidence of an actionable breach of duty and causation by any alleged failure to act by the BOP staff members.   Even if there was breach of duty, Plaintiff has failed to allege the causation element.   Although each staff member "must exercise reasonable and ordinary care and diligence to prevent unlawful injury to a prisoner placed in his custody, but he cannot be charged with negligence in failing to prevent what he could not reasonably anticipate." *60 Am.Jur.2d, Penal & Correctional Institutions, Section 23*.

Here, with Plaintiff's combined knowledge of the Attacker and the Conspirator's history of physical aggression, their possession of stolen razors later used to manufacture a homemade shank, and the planned attack on yet another inmate, Plaintiff failed to notify BOP staff.  Plaintiff acknowledges that "I [Plaintiff] do not believe that anybody knew it [the attack] was going to happen."   (Exhibit A, 41:6-7)   Prior to the attack, the BOP had conducted a shakedown of all of the cells and removed the contraband.    (Id., 53:20-23)   Perhaps, if Plaintiff had reported the planned attack to the BOP staff, the staff could have recovered the razors prior to manifestation of the attack on Plaintiff.  Since the BOP was not aware of the planned attack and carried out their duties, there was no reasonable foreseeability of the danger suffered by Plaintiff.   It is undisputed that BOP officials immediately responded to the attack and removed Plaintiff from the recreational cage.   (Id., 67:1-8)  Therefore, Plaintiff is unable to establish an actionable breach of duty and the requisite causal link.  Accordingly, Plaintiff has failed to state an adequate claim for which relief can

7

be granted.

WHEREFORE, based on the forgoing arguments, the government prays that the Court enter an order granting the Motion for Summary Judgment and dismissing the complaint in its entirety, with prejudice, for the foregoing reasons as outlined in Defendant's Motion.

Respectfully submitted,

PAMELA C. MARSH
United States Attorney

**s/ Winifred L. Acosta NeSmith**
WINIFRED L. ACOSTA NESMITH
Assistant United States Attorney
Florida Bar No. 0076333
111 N. Adams Street, 4th floor
Tallahassee, Florida 32301
(850) 942-8430

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I furnished by certified U.S. Mail to Plaintiff, Jimmy Ray Wakefield, Inmate No. 16902-056, United States Penitentiary, P.O. Box 300, Waymart, PA 18472, this 2nd day of April, 2015.

s/ **Winifred L. Acosta NeSmith**
Winifred L. Acosta NeSmith
Assistant United States Attorney